RECEIVED
MAY 29 2003
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

Criminal No. 01-139(JMR/RLE)

- - - - - - - - - - - - - - - - - - - -

United States of America,
Plaintiff,

-v-

Sentencing
January 10, 2002

David Ernst Voss,
Defendant.

- - - - - - - - - - - - - - - - - - - -

TRANSCRIPT OF PROCEEDINGS

HAD BEFORE THE HONORABLE **CHIEF JUDGE JAMES M. ROSENBAUM**

Minneapolis, Minnesota

APPEARANCES:

For the Government: Jeffrey Paulsen, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415

For the Defendant: Thomas G. Dunnwald, Dunnwald Law Office, 400 Fourth Street South, Suite 1150, Minneapolis, MN 55415

Dawn M. H. Hansen, RMR-CRR
Official Court Reporter
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612)664-5107

SCANNED
JUL 28 2008
U.S. DISTRICT COURT ST. PAUL

FILED MAY 29 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK



16

P R O C E E D I N G S

THE CLERK: Your Honor, the matter on the calendar is United States of America versus David Voss, criminal number 01-139. Would counsel please stand and state their appearance?

MR. PAULSEN: Morning, Your Honor, Jeff Paulsen on behalf of the United States. Special Agent Bob Bushman, case agent, is with me.

THE COURT: Counsel, good morning.

MR. DUNNWALD: Morning, Your Honor, Tom Dunnwald appearing with Mr. Voss, Your Honor.

THE COURT: Mr. Dunnwald, Mr. Voss. I understand there are some matters the parties would like to take up. Let me clear a couple things, if I could. Mr. Voss, would you step up with your counsel. Mr. Voss, have you had a chance to read and review the presentence investigation in this case?

THE DEFENDANT: Yeah.

THE COURT: And, Mr. Dunnwald, have you gone over it with your client?

MR. DUNNWALD: I have, Your Honor.

THE COURT: And the United States, I know, has also received a copy; is that correct?

MR. PAULSEN: Yes, Your Honor.

THE COURT: All right. Now, there are questions

about the reason given for the blow that was struck, and the consequences of that. But I think there's no substantial question that your client admitted under oath that he hit the person who was involved; is that a fair statement?

MR. DUNNWALD: Yes, Your Honor, none at all.

THE COURT: All right. On that basis, in terms of the facts of the presentence investigation of the substantive moments that occurred, it seems to me I can adopt those as my findings. Is that acceptable to the defense?

MR. DUNNWALD: It is, Your Honor.

THE COURT: And the United States similarly?

MR. PAULSEN: Yes, Your Honor.

THE COURT: Based upon that, then, I determine that the probation office has prepared a presentence investigation and while there are objections concerning upshots of things, there's no substantial objection to the facts of the offense, and on that basis, I adopt the statements of the presentence investigation as my findings of fact in this case.

Now, I know there are other and additional issues dealing with acceptance of responsibility, downward departure, questions of obstruction of justice, and on those bases, I understand there's additional information that may come before the Court this morning. With that, sir, you may

be seated if you like. All right?

(Evidentiary hearing held; not herein transcribed.)

THE COURT: Counsel, would you step to the lecturn with your clients. According to the information available to the Court, the United States is of a mind that the defendant is not entitled to acceptance of responsibility. While he pleaded guilty, the United States is of a mind that the defendant has minimized his participation and has failed to illustrate a high degree of probity with the Court.

The defense is of a mind that the defendant ought to be entitled to a reduction primarily based upon the fact that the offense conduct was incommensurate with the penalty, I think is sort of the short version. The defendant has objected to an enhancement for obstruction of justice and is concerned, as I indicated, about the high level of offensible conduct, or high level of penalty compared to the offense that was occurred. And the defendant is of a mind that his client is entitled to acceptance. Have I got a pretty close picture where we are here, counsel?

MR. DUNNWALD: Pretty much, Your Honor.

MR. PAULSEN: The other issue would be the obstruction.

THE COURT: It seems to me that the defendant is not entitled to acceptance of responsibility. His plea before this Court is not even in accord with his statements given this morning. At that time he was explicit it was a

fight over some sort of television thing, and as a result of that he still thought it was appropriate to plead, but today he tells me, also under oath, that it wasn't as a result of the fact that he was hoping to acquire some higher status, and that he did so as a result of the fact that the, ah, the victim was a snitch. Basically, ah, the statements concerning this morning's incident suggest that in fact he was taking some steps to retaliate against Mr. Eckert, because the information is is that the harassment, to the extent that it existed, continued as late as this morning. Under those circumstances, it seems to the Court that I cannot award acceptance of responsibility.

I do think that there ought to be an adjustment, and I intend to make one, for the fact that while the Guidelines call for an extraordinarily large penalty for somebody who threatens a government witness, it seems to me that that is a broad scripture available ranging from threats of murder and murder itself to huge assaults. In this case, under any picture, there was a single punch thrown, and that punch connected, and to subject somebody to twelve, ten or twelve years' time for one punch just seems incommensurate, and I cannot believe that that's an appropriate remedy.

As for obstruction of justice, this is a close and a difficult question. I make it clear that I do not find

Mr. Eckert to be particularly credible under oath. He was zealous to tell me this morning he never spoke with Mr. Smith again. Until he remembered that he actually had. Maybe two or three times. That's not particularly clear. His comments to Mr. Bushman at first can be charitably described as a lie. The second time they can charitably also be described as a lie because they could not both have been true. Under those circumstances, it is difficult to credit his testimony.

I'd also, on the other hand, there is a certain element of credibility which you get by the fact that Mr. Voss continued to harass him this morning while they were in the jail. I find that there is an element of obstruction, but I think I can take care of it in terms of the sentence which I intend to impose.

As to the base level, as I've indicated, it strikes me that the heightened level can be adjusted by recognizing that to the extent that this does fall within the category, and I have no doubt that it does fall in the category of harassment of a government witness, an obstruction of justice in that regard, that a single blow under one circumstance does fall outside of the Heartland as contemplated by the Guidelines. You try and put all that together to see if we come up with something that's more reasonable.

I come up with a total offense level it could be a 22. I start with a base level of 12 for obstruction of justice. That's under 2J1.2. Eight points are added for obstruction, which involved a threat of injury or caused physical injury. Now that part of the obstruction I credit. That's eight points under 2J1.2(b)(1). That obstruction is interfering with a government witness. The two points which would be added for obstruction of justice which involves the violence, or the threats against Mr. Eckert, are the issue where I have a different view of the obstruction as I have indicated. Therefore, if I come up with a 12 -- let me see -- but this case involved the obstruction of a prosecution's witness, ah, concerning 2J1.2(c), which cross references with 2X1.3, providing for an enhanced level of up to six levels. Cranking it up to a thirty. Therefore I wind up with a total offense level of 32, with a base offense level of 38, for the underlying offense which was conspiracy to distribute methamphetamine under 2D1.1(c)(1), but because the ultimate level under 2X3.1 is a thirty, it goes down to thirty, you add two for the obstruction, which I was disinclined to give under the 3C1.1. I think I've got him at a Category I with a level 30. I apologize for something sounding a little less clear than it might otherwise be, but you have multiple back and forths under the Guidelines.

A 30, Level I, would be between 97 and 121 months.

A term of supervised release of three years, a dollar fine, which the defendant is entirely incapable of paying. There's no restitution, and a $100 special assessment. Under these circumstances it appears to the Court that a lower level, as I've indicated, in terms of the fact that this falls outside the Heartland, this defendant walked up and hit one person, one time, and did not inflict a more serious blow, which would cause any kind of permanency or any kind of ultimate injury to the defendant -- to the victim, other than the fact that it ought not to have been done. On the streets it would be an assault. This is not on the streets, it was a government witness, and it did impact on the government's case, because it represented a threat to an other prosecution, which was ongoing. I recognize that. At the same time, there was not a weapon used, no permanency, no injury. With those thoughts in mind I'm of a mind to adjust downward, it falling outside the Heartland, and it seems appropriate under these circumstances to do so.

With those thoughts in mind, is there anything you want to say before I impose sentence in this case, counsel?

MR. DUNNWALD: If I could, Your Honor. I followed the same route the Court did in looking at this. I think that as you can imagine what we'd ask is that the Court seriously consider the, umm, eight-point boost that's given

because of threats of violence or violence, umm, and that we look in that range that, it makes some sense.

The other thing, obviously, that we'd ask the Court to consider is that in this case Mr. Voss, umm, labors under some circumstances the rest of us don't. I think they're treatable, umm, and it's a twofold request. Obviously I'm asking that the Court consider that in looking at sentence. I'm also asking that the Court, umm, consider recommendation, and I realize we'll get to that later, but a recommendation to allow him to finish or complete treatment and therapy that I think would benefit us all greatly. But we'd ask that the Court look at a level 20. In that range. Not, not, and I understand what the Court's talking about in terms of adjustment for the, ah, interference.

THE COURT: For the record, a level 20 would put him somewhere under your wish of 33 to 41 months.

MR. DUNNWALD: Yes, Your Honor.

THE COURT: All right. Mr. Voss, is there anything -- I'm sorry -- is there anything you want to say to me this morning before I impose sentence?

MR. VOSS: No, sir.

THE COURT: On behalf of the United States?

MR. PAULSEN: Your Honor, I understand the concern about the upper, the higher Guideline range, and I share it. I mean, it's a one-punch deal. But this is a very dangerous

man. I mean, his own witness who's treated him said he's a dangerous man because of his impulsivity, if you want to call it that. And he's demonstrated time and time again. He's in custody right now waiting trial on a drive-by shooting. He's punched out his own dad, he's beat up another inmate even after this one occurred. And this man cannot control his tendency towards violence. That makes him dangerous. I think it should be higher than the 33 to 41 which he would get if you didn't count the extra eight points that you need to count because of him trying to interfere with an important methamphetamine case, so that he could help one of his friends who's in the Hell's Angels motorcycle club, a group for which he wants to become a higher status member.

I don't know what the right number is, Your Honor, but another thing that I think you should take into account is the reality of once he's sentenced here what's going to happen to those pending state cases. I mean, how many, he's going to get two for one, three for one, four for one? I think he's got three pending cases, and we all know the reality is when someone gets four, five, six years in federal court some of those state cases, some of the oomph goes out of them.

THE COURT: The problem there, Mr. Paulsen, is, and I mean it, I guess I could sentence him after he's done

with his state offenses, but it's not my job, and I can't control how state judges and state prosecutors choose to impose their penalties.

MR. PAULSEN: I understand that.

THE COURT: And, and I don't think you'd want me to give him 121 over here and then have it consecutive on the state side on each one of those offenses. I mean, that's the realities that I'm facing in response to that argument.

MR. PAULSEN: Well, I know, but what I think the reality is going to be, whatever you give him here he's going to get concurrent time on those state charges.

THE COURT: What if I gave him consecutive here, or can I give him concurrent to unimposed sentences on the state side?

MR. PAULSEN: No, I don't think you could.

THE COURT: What if I were to defer sentencing on the state side?

MR. PAULSEN: Then you'll have more points.

THE COURT: Pardon?

MR. PAULSEN: You'll have more criminal history points and your numbers will go up. I'm not urging you do that. Let's get this one over with. I just wanted to point out the reality when all of these things are bundled together and if he's convicted in state court there's going

to be some --

THE COURT: On a drive-by if he's convicted, presumably he's going to draw a very large number.

MR. PAULSEN: Well, and then if it's a concurrent with this one, this one will be a freebie. That's my only point, Your Honor.

THE COURT: I appreciate it. And that leaves me as confused as you about what the ultimate outcome is, counsel.

MR. PAULSEN: I think it should be higher than 33 to 41, and if you think it's appropriate to go down from the 97 to 121, I don't disagree with that, but I think it should be somewhere in the middle.

THE COURT: I appreciate that. Mr. Voss, you are a person who has a number of problems. You've known it for a long time. Your family, heavens knows, has known it, and apparently anyone who's around you from time to time gets exposed to it. I feel bad for the problems that you have, and I feel terrible for the difficult life that has caused you and your family in particular, but the fact that you have problems cannot be permitted to cause you, or allow to you commit crimes and hurt other people. It's just not something that's available to somebody. If I have a cold I'm not allowed to hurt somebody else. If you have a mental difficulty, you're not allowed to hurt other people. That's

how it works.

The government has properly pointed out the realistic fact that when I impose sentences, particularly when the government of the United States is paying for your imprisonment, many state judges may be inclined to just sort of lie on the federal time, and that's as it may be. But I cannot ultimately be responsible for what will be imposed by the state courts. Your lawyer has suggested I go down to 33 to 41 months. I'm not inclined to do that. The government, on the other hand, has properly recognized, and I think they have properly recognized, that the penalty for a single punch perhaps ought not to be as long as ten years. So somewhere in there it's my job to try and balance what to do. And I will tell you that I have fashioned a sentence which I hope does that.

And so I tell you, David Ernst Voss, that you were charged in Count 1 of an indictment with retaliation against a federal witness in violation of 18 United States Code Section 1513(b)(2). Based upon your plea of guilty, it is considered and adjudged that you are guilty of that offense. And therefore it is adjudged that you are committed to the custody of the Bureau of Prisons for imprisonment for a term of 60 months. You'll be given credit for the time which you have served.

Further, it is ordered that you serve a term of

supervised release of three years, and during that time you must comply with state, federal, and local laws, comply with the rules and regulations of the probation office, abide by the standard conditions of supervised release.

You may not possess a firearm or a dangerous weapon.

You will submit to drug testing as required by statute, and participate in substance abuse treatment if your probation officer recommends it.

I will also require, as a specific term of your supervised release, that you comply in any psychological, psychiatric, or therapy program which is recommended by any probation off -- by any, ah, appropriate healthcare provider, and approved by your probation officer. A failure to comply with that regimen will be explicitly a violation of my supervised release, for which I can put you back in jail. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: All right. You are to comply, then, with mental health services, as I've indicated, and you are to abstain from the use of drugs, chemicals, or intoxicants, and that will be regarded again as a specific violation.

Sir, if you mess with those things, they lower the barriers which you have already low enough, and when that happens you get in trouble, and you hurt other people, and

I'm not going to be party to it.

It is ordered that you pay a special assessment in the amount of $100. You owe that sum immediately. I will recommend that you be confined in a correctional institution which can provide you ongoing drug treatment, or, ah, I mean, treatment, including psychotropic treatment and therapy for whatever difficulties you have. I do not impose a fine, you are unable to afford one.

You are in custody, and it appears appropriate that you remain in custody, and you will be given credit for the time that you have served.

You have a right to appeal from the sentence which I have imposed, and you must do so within ten days. You have a good lawyer, and if you ask him to do that, he will place your appeal. If you waive your right to appeal, and you do not fake that appeal, it is gone permanently. I would suggest you discuss it carefully with your lawyer, however, because I have gone down a good distance from what I believe to be the appropriately calculated Guideline.

On the other hand, the United States also has a right to appeal, and that's their privilege. And if you need a lawyer to defend you, one will be provided at no cost. There is a wide sentencing range in this case, and under those circumstances, I feel it appropriate to give as my reasons, the reasons which I have set forth within the

context of this discussion. Sir, you have done a wrong thing, and it is injurious to the United States. You have not fully accepted your responsibility, but I recognize there are a number of difficulties from which you suffer. And ultimately when somebody throws a single punch it seems to me that nobody, including the government, really had in mind that you do ten years for it. So I've tried to balance all those things, and on that basis I have set the sentence which I have. Anything else we need to take up, counsel?

MR. PAULSEN: Not from the government.

MR. DUNNWALD: No, Your Honor.

THE COURT: Thank you and good luck to you, sir. We are in recess.

(Recess.)

# CERTIFICATE

I, Dawn Marie Higby Hansen, do certify that the above and foregoing 80 pages of transcript is a true, correct, and accurate transcription of my stenographic notes taken in the above proceedings.

May 26, 2003
Date

Dawn M. H. Hansen
Dawn Marie Higby Hansen
Official Court Reporter